# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

LOGAN O. BISHOP, SR.,     )
                        )
        Plaintiff,     )
                        )
vs.                    )     Case No. CIV-11-550-HE
                        )
                        )
ROBIN ROOF, et al.,     )
                        )
        Defendants.     )

## REPORT AND RECOMMENDATION

Plaintiff has brought this action complaining of alleged constitutional violations by various individuals during his incarceration at two private prisons, the Cimarron Correctional Facility ("CCF") and the Davis Correctional Facility ("DCF"). Doc. 1.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B),(C). Now at issue is Defendants' motion seeking summary judgment based on Plaintiff's failure to properly exhaust his administrative remedies.  Doc. 69.

## I.    Plaintiff's complaint.

Plaintiff alleges through his first count that Defendants Ray Choate – his Unit Manager at CCF – and John Middleton – the CCF Assistant Warden – denied him a safe environment in violation of the Eighth Amendment.  Doc. 1, at 3, 5, and 6.  Plaintiff, who is Jewish, contends Defendant Choate intentionally

placed him in a two-man cell with a member of a gang that professed hatred towards Jews and did so in retaliation for complaints Plaintiff had previously lodged. *Id.* at 3. He maintains he voiced his concerns about the cell assignment to Defendant Middleton who took no action. *Id.* He claims psychological distress and anxiety as a result of the cell assignment. Id. at 6. His second count alleges "cruel and unusual punishment and/or intentional infliction of emotional distress, in violation of the 8th Amendment." *Id.* at 7. Generally referenced are the combination of his wrongful cell assignment, the disregard of his serious medical needs, the denial of due process and equal protection through the imposition of wrongful punishment, the denial of his First Amendment rights to practice his religion, the communication of "false and misleading grievance procedure information to him," his transfers back and forth between DCF and CCF, and "acts of retaliation due to his grievances and complaints." *Id.*

Through his third count Plaintiff claims deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *Id.* at 8-10. He complains of having his wheelchair taken from him; of the cancellation of an order for an MRI, special shoes, and an inmate caregiver; of the cancellation of his "medically unassigned" prison job status; of the deprivation of an extra roll of toilet paper; and, of exposure to second-hand smoke. *Id.* at 9-10. His fourth and fifth counts, respectively, assert his wrongful demotion by Defendant Choate

from inmate classification Level Four to classification Level One in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the denial of his First Amendment right to practice his religion without undue interference.  *Id.* at 11-12, 13-15.

Plaintiff complains in his sixth count that the inmate handbook that was distributed to him through Defendants Joseph Taylor and Robert Ezell – the wardens at CCF and DCF, respectively – provided "false and deliberately misleading information" regarding required adherence to the DOC grievance process or private prison's own grievance procedures.  *Id.* at 2, 16.  He alleges that inmates who use the private prison grievance procedure instead of the DOC procedure "run the very real risk of having their legal action dismissed for failure to follow the correct method of exhausting administrative rededies [sic]."  *Id.* at 16.

In addition, Plaintiff contends "he has submitted several written Requests to Staff, Grievances, and one Emergency Grievance which prison officials have refused to answer."  *Id.* at 17.  Specifically, Plaintiff references a July 2, 2010, emergency grievance regarding the confiscation of his legal material at DCF; another emergency grievance on October 10, 2010, at DCF complaining of the denial of a handicapped shower; and, a grievance at CCF regarding Defendant Choate's confiscation of Plaintiff's television and legal materials.  *Id.*  Plaintiff

further alleges that "Oklahoma state law 57 O.S. § 566.3(G) specifically requires prison officials to answer grievances." *Id.* Finally, Plaintiff "specifically alleg[es] that the defendants have retaliated against him for his exercise of his legal right to complain via the grievance procedure and by contacting various outside entitles [sic], including religious leaders, the ACLU, and various politicians." *Id.* at 18.

## II.    Relevant procedural history.

Pursuant to court order and consistent with *Martinez v. Aaron*, 570 F. 2d 317 (10th Cir. 1978), a Special Report regarding the subject matter of the complaint was submitted.  Doc. 25.  Defendants Taylor, Middleton, Roof – the CCF Health Services Administrator, – Choate, and Ezell – by now the former warden at DCF[1] – then filed a motion to dismiss Plaintiff's action, a motion grounded, in part, on Plaintiff's alleged failure to properly exhaust his administrative remedies before filing suit.  Doc. 26.

Plaintiff subsequently sought an order requiring that the Special Report be supplemented to include, among other items, copies of all requests to staff and any grievance or emergency grievance submitted by Plaintiff.   Doc. 30. Thereafter, Plaintiff filed an objection to the Special Report in which he detailed

---

[1]     United States District Judge Joe Heaton ordered the substitution of current DCF Warden Tim Wilkinson, in his official capacity only, for former Warden Ezell in his official capacity.  Doc. 88.

what he believed to be various omissions and inaccuracies in the report.  Doc. 37.

Of significance to the exhaustion issue, Plaintiff pointed out that while the

Grievance Log, an attachment to the Special Report, shows he had submitted six

grievances – Nos. 09-27, 09-50, 09-101, 09-105, 09-106, and 09-108 – the Special

Report Coordinator attached only three of those grievances – 09-101, 09-105, and

09-106.  *Id.* at 4.  In addition, and again of significance both to Plaintiff's

exhaustion efforts and to the procedural background of this case, Plaintiff noted

that the Special Report investigation findings were that he had not grieved his

claim regarding the assignment of gang members to share his cell.  *Id.*  He

asserted that he did so through an Emergency Grievance and that "[t]his is a

genuine issue of material fact in controversy."  *Id.*

Defendants filed a response in opposition to Plaintiff's motion to

supplement the Special Report; Plaintiff filed a reply.  Docs. 40, 44.  Also, and

in direct response to Defendants' motion to dismiss, Plaintiff filed an objection,

attaching "some supporting documents to prove . . . his diligent efforts to exhaust

administrative remedies," including the disputed Emergency Grievance over

being celled with gang members.  Doc. 48, at 10.

Magistrate Judge Bana Roberts, to whom this matter was initially

referred, determined that the court would resolve only that portion of the motion

to dismiss pertaining to Plaintiff's alleged failure to exhaust before reaching any

arguments on the merits of Plaintiff's claims.  Doc. 57.  The same ruling applied to those aspects of Plaintiff's request for supplementation which were not directly related to exhaustion.  *Id.*  As to the exhaustion-related issues in the request for supplementation of the Special Report, Judge Roberts granted Plaintiff's motion to the extent "the Special Report should be supplemented with any information/documentation pertaining to each of the six grievances referenced under Plaintiff's name on the grievance log[2] which was included in the Report" as well as "with any information/documentation pertaining to any emergency grievance submitted by Plaintiff during the time period relevant to his claims." *Id.* at 2.  Nonetheless, Judge Roberts denied Plaintiff's request that the report be supplemented with copies of any requests to staff submitted by Plaintiff to any Defendant.  *Id.* at 3.  Relying on Defendants' representation that this would be impossible because the facilities track only those requests to staff

---

[2]     Judge Roberts noted Plaintiff's request that the Special Report be supplemented with *all* of the grievances and emergency grievances he submitted, presumably during his entire period of confinement at CCF and DCF. Doc. 57.  In limiting the required supplementation of the Special Report to the six specific grievances recorded on the grievance log, Judge Roberts noted Defendants' representation that the grievance log tracked *all* grievances submitted by an inmate.  *Id.* at 2.  In addition, she referenced Plaintiff's language in his reply brief "re-urg[ing] his request that a copy of all six grievance documents be submitted." *Id.* at 2, n.1 (quoting Doc. 44, at 3). *See also* Doc. 25, Exhibit 7, Oklahoma Department of Corrections' Offender Grievance Process, OP-090124, at XI.A.1.

that are attached to a grievance and thus become a part of the grievance record,[3] Judge Roberts reasoned it would be futile to order supplementation of the Special Report in that regard. *Id.*

Judge Roberts set time frames for the ordered supplementation and for Defendants to either submit a motion for summary judgment on their exhaustion defense or to notify the court that they were electing to stand on the exhaustion portion of their motion to dismiss, a motion which the court would treat as one for summary judgment. *Id.* at 3. Judge Roberts also established new response and reply dates. *Id.*

The Supplemental Special Report was then submitted. Doc. 64. Plaintiff subsequently objected, repeating the arguments made in connection with the initial report and making his case on the issue of exhaustion. Doc. 66. Judge Roberts struck the objection and directed Plaintiff to use his response to Defendants' new – or reurged – motion to "voice – in a single filing – all of his objections and legal arguments with regard to Defendants' failure to exhaust claim." Doc. 67. Defendants then submitted a new motion for summary

---

[3]     This representation is substantiated by the records keeping provisions of the Oklahoma Department of Corrections' Offender Grievance Process, OP-090124, and its requirement that "[a] copy of the *grievances* submitted and dispositions of those grievances will be maintained for three years at each level the grievance was submitted." Doc. 25, at Exhibit 7, DOC Offender Grievance Process, at XI.B. (emphasis added).

judgment, Plaintiff filed his objection, and the matter is now at issue.  Docs. 69, 76.

After consideration of the parties' arguments – including, for the sake of thoroughness, those made by Plaintiff in his stricken objection to the supplemental report – the undersigned recommends for the following reasons that Defendants' motion for summary judgment based on Plaintiff's failure to properly exhaust his administrative remedies prior to filing suit be granted as to all claims with the exception of Plaintiff's failure to protect claim.

## III.   Analysis.

### A.   Standard of review.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted).  And, while a pro se plaintiff's complaint is liberally construed, a pro se plaintiff must adhere to the same rules of procedure which are binding on all litigants.  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required.  With respect to

those requirements, the Supreme Court has determined that

> the plain language of Rule 56 . . . mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when an affirmative defense – such as the failure to exhaust administrative remedies – is asserted in a motion for summary judgment, Defendants "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

## B.    Exhaustion of administrative remedies.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides as

follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

**C.   The applicable grievance policy**.

Though Plaintiff alleges in his sixth count that inmates who use the CCF

and DCF private prison grievance policy instead of the Oklahoma Department of Corrections' ("DOC") grievance procedure risk dismissal of their actions, he does not claim he used the private prison policy to his detriment.[4]   To the contrary, he affirmatively pleads that "Plaintiff has utilized the established Department of Corrections grievance procedure set forth as OP-090124." Doc. 1, at 19.   Thus, prior to initiating this lawsuit, Plaintiff was required to exhaust his administrative remedies pursuant to the that policy.   *See* Doc. 25, Exhibit 7, DOC Offender Grievance Process, OP-090124.

This process requires an initial, informal attempt to resolve a complaint by talking with the case manager, supervising employee, or other appropriate staff.   *Id.* at IV.A.   If the matter remains unresolved, the inmate must then submit a written "Request to Staff," briefly but completely describing his complaint.   *Id.* at IV.B.1.   Should the informal attempts at resolution fail, the inmate's next step is submission of an "Offender Grievance Report Form" to the reviewing authority.   *Id.* at V.A.   An unfavorable response to the grievance may then be appealed to the administrative review authority ("ARA").   *Id.* at VII. The ultimate ruling of the ARA – of which the chief medical officer is a part – concludes the administrative process available to an inmate through the

---

[4]    Moreover, while Defendants refer to the private prison policy, they do not challenge Plaintiff's exhaustion efforts on the grounds that he failed to adhere to it.

11

Oklahoma Department of Corrections.  *Id.* at VII.D.

**D.    The grievances addressed by this report.**

Because "unexhausted claims cannot be brought in court," *Jones,* 549 U.S. at 211, the only claims that can be validly asserted are those that were properly grieved under a procedure that was fully available to Plaintiff.  *See Jones v. Little,* 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted) (If "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.").

Accordingly, rather than proceeding on a claim-by-claim basis, this report considers the grievances specifically addressed in Defendants' motion for summary judgment – Grievance Nos. 09-27, 09-50, 09-101, 09-105, 09-106, and 09-108 – along with Defendants' contentions that these grievances either were not properly exhausted, or that the claims implicated by a particular grievance are barred by the statute of limitations, or that Plaintiff did not exhaust any of his claims through a particular grievance.  Doc. 69.

In addition, any facially temporal grievance specifically referenced by Plaintiff in his complaint – the only verified filing submitted by Plaintiff bearing

on exhaustion of prison remedies[5] – are addressed.  Doc. 1, at 19.  The numbers

assigned to three of these grievances – Nos. 07-157, 08-49, and 08-176 – reflect

that they were submitted in 2007 and 2008.   Consequently, they pre-date

Plaintiff's claims and have no apparent – or asserted – bearing on Plaintiff's

exhaustion of those claims.  The remainder of the grievances listed by Plaintiff

– Nos. 09-27, 09-101, 09-105, and 09-106 – are addressed, as is No. 09-108,

misidentified as 09-109.

The final grievance addressed by this report is Plaintiff's alleged August

1, 2009 emergency grievance.  *Id.* at 3, 5.

### 1.   Grievance No. 09-27.

Pursuant to Fed. R. Civ. P. 56, Defendants state as uncontroverted fact

that on January 25, 2009, Plaintiff submitted a request to staff to Defendant

Middleton regarding property that was allegedly stolen by CCF staff in 2008 and

complaining that staff had failed to respond to a previous request to staff.  Doc.

69, at 2-3, ¶ 4.  In response to Plaintiff's request for an answer so that he could

grieve the issues, Defendant Middleton stated, "It appears that you should have

grieved the issue before now."  *Id.* at 3, ¶ 4.  Plaintiff then filed Grievance No.

---

[5]    A review of the record demonstrates Plaintiff's awareness of the
verification process.  *See, e.g.*, Doc. 71, at 8.

09-27[6] on the issue on February 17, 2009; it was returned unanswered on February 17, 2009 as being filed out of time. *Id.* In support of these facts, Defendants cite to copies of these grievance records, verified by the Supplemental Special Report as being the complete records. *Id.*; Doc. 64, at 10; *id.*, Exhibit 1, at 1-4. Defendants maintain that any alleged constitutional violation implicated by "th[is] grievance[] clearly fall[s] outside of the two-year window preceding the filing of Plaintiff's lawsuit . . . on May 16, 2011." Doc. 69, at 16.

The period of limitations for a § 1983 action is governed by the forum state's law applicable to personal injury actions. *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-84 (1980). In Oklahoma, the limitations period for § 1983 actions is two years. *See Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. DeLand,* 49 F.3d 673, 675 (10th Cir. 1995) (citation and quotation omitted).

Plaintiff's complaint does not assert a claim regarding the loss of property in 2008. Accordingly, this grievance – seeking the return of property or monetary compensation – has no facial relevance to the issue of exhaustion of

---

[6]     As relief, Plaintiff asked "[t]hat my stolen/lost property be replaced or I be compensated the full value of the property[.]" Doc. 64, Exhibit 1, at 2.

those claims.  In any event, Defendants have affirmatively established that all facts supporting *any* claim Plaintiff wished to make arising out of either the subject matter or the administrative response to Grievance No. 09-27 – as well as defects in the administrative response preceding the grievance – were both established and apparent in February 2009 – the date of the last administrative filing with regard to this grievance – and any purported claim asserted after February 2011 would be barred by the statute of limitations.

Accordingly, Plaintiff must now "demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564.  In objecting to the summary judgment motion, Plaintiff contends that the two-year statute of limitations runs from the date he completely exhausted his administrative remedies.  Doc. 76, at 3.  He claims "Defendants did not provide a copy of the document which Plaintiff was required to sign to verify the date on which he actually received the final decision of the DOC Administrative Review Authority regarding his grievance appeal[] for grievance number[] 09-2[7]." *Id.*  He further claims that "the date on which the ARA dated the final grievance appeal response is provided, but not the date on which Mr. Bishop actually signed it." *Id.*  Plaintiff, however, neither directs the court to evidence nor does he affirmatively state – under penalty of perjury or otherwise – that he pursued such an appeal.  In fact, in this same response, Plaintiff subsequently admits

15

that he submitted the grievance documents as stated by Defendants and makes no reference to any grievance appeal; rather, he complains about being unable to prove that he had submitted a request to staff. *Id.* at 6-7.

In his objection – ordered stricken – to the Supplemental Special Report, Plaintiff also argued with regard to this grievance that he was told he must file a Government Tort Claim – a process requiring ninety (90) days and "extending the statute of limitations" – prior to filing a lawsuit. Doc. 66, at 2. Plaintiff's only supporting evidence is that the DOC grievance policy affirmatively advises inmates of this requirement. *Id.* Contrary to Plaintiff's representation, the policy states that "[t]he department grievance procedure does not satisfy the additional requirements for exhaustion of administrative remedies required by the Oklahoma Governmental Tort Claims Act" and advises that "[o]ffenders *may* also be required to file a tort claim prior to filing a lawsuit." Doc. 25, Exhibit 7, DOC Offender Grievance Process, at VII.D.2.

Plaintiff's response fails to create a genuine issue of material fact. No claim asserted by Plaintiff was exhausted by Grievance No. 09-27.

### 2.   Grievance No. 09-50.

Pursuant to Fed. R. Civ. P. 56, Defendants state as uncontroverted fact that on March 2, 2009, Plaintiff submitted a request to staff asking to know what doctor had made the assessment that Plaintiff was no longer medically

unassigned.  Doc. 69, at 3, ¶ 6.  In response, Defendant Roof wrote, "Dr. Clymer told you on August 8 to provide the copy of the offsite MRI verifying injury to your lower back.  You were told at that time failure to do so could cause you to lose your wheelchair." *Id.*  Defendant Roof went on to explain to Plaintiff that he "was certainly capable of performing many tasks, wiping tables, cleaning food areas, etc." *Id.*  Plaintiff then submitted Grievance No. 09-50 on March 9, 2009, on the issue of Plaintiff's medically assigned status. *Id.* at ¶ 7.  The supporting grievance records cited by Defendants show that the reviewing authority's denial of the grievance was received by Plaintiff on March 17, 2009.  Doc. 64, Exhibit 1, at 5.  On March 25, 2009, Plaintiff appealed the response to his grievance. *Id.* at 13.  Medical Services Administrator McCoy denied relief on April 30, 2009. *Id.* at 11.

Defendants acknowledge as an uncontroverted fact that "Plaintiff did follow the grievance policy through to exhaust grievance No. 09-50," further stating, however, that "Plaintiff's complaint was filed with this court on May 16, 2011 " and that "[i]ssues grieved by Plaintiff prior to May 16, 2009, are not timely presented to this Court." Doc. 69, at 3-4, ¶ 7.

Applying the statute of limitations principles discussed above on p. 14, all facts supporting *any* claim Plaintiff wished to make arising out of either the subject matter or the administrative response to Grievance No. 09-50 – as well

as defects in the administrative response preceding the grievance – were both established and apparent as of April 30, 2009.  Any claim he asserted two years beyond that date is barred by the statute of limitations.

Accordingly, Plaintiff must once again "demonstrate with specificity the existence of a disputed material fact."  *Hutchinson*, 105 F.3d at 564.  In his response to the summary judgment motion, Plaintiff again contends that the two-year statute of limitations runs from the date he completely exhausted his administrative remedies.  Doc. 76, at 3.  As before, he claims that "Defendants did not provide a copy of a document which Plaintiff was required to sign to verify the date on which he actually received the final decision of the DOC Administrative Review Authority regarding his grievance appeal[] for grievance number[] . . . 09-50."  *Id.*  He then acknowledges that "the date on which the ARA dated the final grievance appeal response is provided," but claims "the date on which [he] actually received it" was not provided.  *Id.*  Later in this same response, he repeats that "[t]he date on which the Plaintiff got his grievance appeal response was not proven and a copy of the document which inmates have to sign upon receipt of it was not provided."  *Id.* at 7.

The DOC's Offender Grievance Process, however, makes no reference to such a document and, with respect to finality, unequivocally states that "[t]he ruling of the administrative review authority or chief medical officer is final and

18

will conclude the internal administrative remedy available to the offender" and that "[t]he offender will have satisfied the internal exhaustion of administrative remedies required by Oklahoma Statute 57 O.S. § 564." Doc. 25, Exhibit 7, DOC Offender Grievance Process, at VII.D.1.   In any event, Plaintiff makes no assertion – under penalty of perjury or otherwise – that he failed to receive the denial at some point between April 30, 2009 and prior to April 30, 2011.

In addition, in his objection – ordered stricken – to the Supplemental Special Report, Plaintiff once again claims he was told he must file a Government Tort Claim – a process requiring ninety (90) days – prior to filing a lawsuit and that DOC grievance policy affirmatively advises inmates of this requirement.  Doc. 66, at 2.  Again, contrary to Plaintiff's representation, the policy states that "[t]he department grievance procedure does not satisfy the additional requirements for exhaustion of remedies required by the Oklahoma Governmental Tort Claims Act" and advises that "[o]ffenders *may* also be required to file a tort claim prior to filing a lawsuit." Doc. 25, Exhibit 7, DOC Offender Grievance Process, at VII.D.2.

Plaintiff's response fails to create a genuine issue of material fact.  No claim asserted by Plaintiff was exhausted by Grievance No. 09-50.

### 3.    Grievance No. 09-101.

Pursuant to Fed. R. Civ. P. 56, Defendants state as uncontroverted fact

that on May 28, 2009, Plaintiff submitted a request to staff to Chief of Unit Management Fields asking him to compel Defendant Choate to follow policy and respond to Plaintiff's requests to staff in writing. Doc. 69, at 4, ¶ 8. In response, Chief Fields advised Plaintiff that Defendant Choate stated he had verbally responded; that Plaintiff's "repeated requests are unnecessary;" and, that his level demotion resulted from judgment that Defendant Choate was authorized to exercise. *Id.* Plaintiff then submitted a grievance with regard to the failure of staff to respond to his requests to staff and requesting "[t]hat Chief Fields be instructed in proper policies and procedures and that he insure that all staff under him and proper and correctly trained." *Id.* at ¶ 9; Doc. 25, Exhibit 4, at 3. Defendant Taylor responded to the grievance, stating that Chief Fields had made a timely response to the request to staff; that "Mr. Choate will respond in writing as required by policy;" that there was no evidence of any conspiracy or intent to deny Plaintiff due process or access to the courts; and, finally, that "[y]our request that staff be reminded of the requirement to respond in writing to appropriate inmate requests to staff is granted." *Id.* Plaintiff appealed "the warden's response in order to protect [his] rights to litigate this issue." Doc. 25, Exhibit 4, at 5-6. The administrative review authority returned the grievance unanswered because "[r]elief was granted by the facility head." *Id.* at 2.

In seeking summary judgment, Defendants argue that Plaintiff did not

exhaust any of his *claims* through the grievance.  Doc. 69, at 12-13.  Plaintiff's response to the summary judgment motion only acknowledges that "Defendants admit that Plaintiff's exhaustion was complete, in that relief was granted." Doc. 76, at 4.  The same is true in his objection – stricken – to the Supplemental Special Report.  Doc. 66, at 3.  He does contest the argument that he failed to exhaust any of his *claims* through the grievance process.

In response to Defendants' initial dispositive motion on the exhaustion issue, however, Plaintiff stated that the underlying issue with respect to this grievance was Defendant Choate's April 1, 2009, "demotion" of his inmate classification level.  Doc. 48, at 5.  Plaintiff stated he sent a request to staff to Defendant Choate "asking him to state in writing the reason for the level demotion."  *Id*.  He claimed that "by refusing to reply to his RTS, Choate prevented Plaintiff from being able to grieve anything except his failure to respond to the initial RTS."  *Id*.  Thus, Plaintiff acknowledged he had a remedy – he could have grieved Defendant Choate's failure to respond to his request to staff.[7]  He rejected the remedy, however, on the grounds that the grievance

---

[7]     As Defendants argue, the DOC Offender Grievance Process provides that in the absence of a response to a request to staff "in 30 calendar days of submission, the offender may file a grievance to the reviewing authority with evidence of submitting the 'Request to Staff' to the proper staff member.  The grievance may assert only the issue of the lack of response to the request to staff."  Doc. 25, Exhibit 7, DOC Offender Grievance Process, at IV.B.7; Doc. 69,
(continued...)

process has "no provision . . . whereby an inmate can prove that he submitted a RTS, or prove the date he submitted it" and that "[h]e cannot grieve the original issue raised in his request to staff."  Doc. 48, at 4.

With regard to Plaintiff's suggestion that this remedy was effectively "unavailable" because an inmate cannot prove that he submitted a request to staff, when Plaintiff submitted his request to staff – the request underlying Grievance No. 09-101 – to Chief Fields, Plaintiff stated that "[t]his is my second request to you concerning my illegal demotion and the fact Unit Manager Choate refuses to comply with D.O.C. policy by refusing to answer my submitted Request to Staff[.]" Doc. 25, Exhibit 4, at 7.  In his response, Chief Fields wrote, in part, that "UM Choate states that he has responded *verbally*." *Id.* (emphasis added).  Plaintiff, however, did not submit a grievance with this evidence – establishing that he had submitted an unanswered request to staff to Defendant Choate – and assert the lack of the requisite written response as his only issue. Instead, Plaintiff's requested relief in the grievance he did file – No. 09-101 – was "that Chief Fields be instructed in proper polices and procedures and that he insure that all staff under him are proper and correctly trained."  *Id.* at 3. His grant of relief by Defendant Taylor was that "staff [would] be reminded of

---

[7](...continued)
at 12-13.

the requirement to respond in writing to appropriate inmate requests to staff." *Id.* at 5.

Moreover, and contrary to Plaintiff's argument, simply because failure to respond is the only *issue* that can be asserted in that particular grievance, there is nothing in the policy suggesting that an offender's relief would be nothing more than a hollow victory.  Even assuming that to be the case, it is part of the procedure that must be fully exhausted.  *See Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.") (quotation omitted).

Plaintiff failed to utilize the remedy available to him, thus failing to exhaust any claim, including a claim against Defendant Choate or any named Defendant regarding the reduction in his inmate classification level.[8] Defendants' claim that "Plaintiff did not exhaust any of his claims through Grievance No. 09-101" is well-taken.  Doc. 69, at 16.

---

[8]     Moreover, even though Plaintiff did not properly grieve Defendant Choate's failure to respond in writing to Plaintiff's requests to staff, Defendant Taylor's response to Plaintiff's Grievance No. 09-101 stated that "Mr. Choate will respond in writing as required by policy."  Doc. 25, Exhibit 4, at 5.  There is no indication in the record that Plaintiff made any attempt to use that portion of the response to seek a written response from Defendant Choate on the reduction in classification level issue, a response that he could then grieve through the required administrative process if he did not obtain relief from Defendant Choate.

### 4 & 5.         Grievance Nos. 09-105 and 09-106.

The issue with respect to both of these grievances is the timeliness of Plaintiff's grievance appeals.  Pursuant to Fed. R. Civ. P. 56 and with regard to Grievance No. 09-105, Defendants state as uncontroverted fact that Plaintiff's appeal of the denial of this grievance to the Oklahoma Department of Corrections "was returned to him unprocessed because of several failures including not being timely received."  *Id.* at 5, ¶ 12.  In support of this fact, Defendants cite to a copy of the applicable grievance record.  *Id.*; Doc. 25, Exhibit 4, at 8.  Likewise, with regard to Grievance No. 09-106, Defendants state as uncontroverted fact that Plaintiff appealed the denial of Grievance No. 09-106 "to the Oklahoma DOC but it was returned to him unprocessed because of several failures, including not being timely received."  Doc. 69, at 6, ¶ 15.  In support of this fact, Defendants cite to a copy of the applicable grievance record. *Id.*; Doc. 25, Exhibit 4, at 8.

In her letters to Plaintiff explaining why his enclosed grievance appeals – both dated July 1, 2009 – were being returned to him unanswered, Medical Services Administrator McCoy provided several reasons, including the following: "Grievance appeal not received within 15 calendar days of receipt of the reviewing authority's response.  According to OP-090124, there is no mailbox rule regarding submission of requests to staff or grievances and grievance

<u>appeals.   The documents must be received in the appropriate office within the required time frame.</u>"   Doc. 25, Exhibit 4, at 8, 16; Doc. 69, at 4-6, ¶¶ 10-15; *id.* at 13-14.

Pursuant to DOC Offender Grievance Process, an "offender may make a final appeal to the administrative review authority or chief medical officer, whichever is appropriate, within 15 calendar days of receipt of the reviewing authority's response or any amended response."   Doc. 25, Exhibit 7, DOC Offender Grievance Process, at VII.B.   In addition, "there is no mailbox rule regarding submission of . . . grievance appeals.   The document must be received in the appropriate office within the required time frame.   Deposit in the mail will *not* be sufficient to meet time frames."   *Id.* at XII (emphasis added).

It is undisputed that Plaintiff signed for the receipt of the responses from the reviewing authority to both of these grievances on June 16, 2009.   Doc. 76, at 4, 5.   Likewise, Plaintiff does not dispute the fact – nor can he – that he did not sign either grievance appeal until July 1, 2009, the fifteenth day following his receipt of the response.   *Id.* at 4-6; Doc. 25, Exhibit 4, at 11, 17.   Pursuant to the governing grievance policy, Plaintiff's deposit of the appeals in the mail on the date he signed them was not sufficient to meet the required time frames.

Thus, Defendants have met their burden of establishing that Plaintiff failed to properly exhaust Grievance Nos. 09-105 and 09-106 and, in response,

Plaintiff has failed to establish the existence of a genuine issue of material fact. Regardless of any other reason provided by Ms. McCoy for returning Plaintiff's grievance appeals as unanswered,[9] Plaintiff failed to timely and, thus properly, exhaust his remedies under the available administrative procedure, and Defendants are entitled to summary judgment on any claim implicated by these two grievances.

### 6.   Emergency Grievance No. 09-108.

Pursuant to Fed. R. Civ. P. 56, Defendants state as uncontroverted fact that Plaintiff "filed an 'Emergency' Grievance, No. 09-108[,] on June 8, 2009. The grievance was returned the same day when the Grievance Officer determined that the issue was not an emergency.  Plaintiff did not re-submit the grievance through the standard grievance process."  Doc. 69, at 6, ¶ 16.  In support of these facts, Defendants rely on copies of these grievance records, verified through the Supplemental Special Report as the complete records, and the explanatory affidavit of CCF Grievance Coordinator Kathy Jones.  Doc. 64, at 10; *id.,* Exhibit 1, at 15-17;  *id.,* Exhibit 2.

---

[9]      The DOC Offender Grievance Process requires that the submission of a grievance for appeal must be mailed through the U.S. Postal Service. Doc. 25, Exhibit 7, Offender Grievance Process, at VII.B.1.d.  Likewise, "[a]n offender will submit a grievance within the time frames established [throughout the procedure]; if not, the grievance will be returned unanswered as untimely submitted[.]" *Id.* at II.C.

Defendants' evidence affirmatively establishes that pursuant to the DOC Offender Grievance Process, Grievance No. 09-108 – a grievance submitted by Plaintiff as an emergency grievance – was determined not to be of an emergency nature and was returned to Plaintiff.  *See* Doc. 25, Exhibit 7, DOC Offender Grievance Process, OP-090124, at VIII.C.  Though he was notified that he must follow the standard grievance process, Plaintiff did not resubmit the grievance. Accordingly, Defendants have met their initial burden of establishing that Plaintiff failed to properly exhaust his administrative remedies as to any claim implicated by Emergency Grievance No. 09-108.

Accordingly, Plaintiff must now "demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564.  Plaintiff's response in both his objection – stricken – to the Supplemental Special Report and to the summary judgment motion is that the issue of whether his grievance was of an emergency nature is a fact in controversy and precludes summary judgment. Doc. 66, at 7; Doc. 76, at 8.  He argues that if the court finds it was an emergency situation, then Defendants violated policy, excusing exhaustion.  Doc. 66, at 7; Doc. 76, at 8.

Plaintiff clearly had an available administrative remedy – to proceed through the regular grievance process – but he failed to employ it and, consequently, failed to exhaust any claim through Emergency Grievance No. 09-

108.

### 7.    Plaintiff's alleged August 1, 2009 emergency grievance.

According to Defendants, Plaintiff did not submit a grievance with respect

to his claim that he was held in an unsafe environment.  Doc. 69, at 15.  Thus,

Defendants did not address Plaintiff's sworn assertions in his complaint[10] that

he submitted an emergency grievance on the matter to Defendant Taylor on

August 1, 2009 and that the grievance was never answered.  Doc. 1, at 3, 5; Doc.

48, at 10-11.[11]  Consequently, in seeking summary judgment on Plaintiff's sworn

– and supported – assertion that he submitted an emergency grievance with

regard to his safety concerns, Defendants have failed to show there is no genuine

dispute as to any material fact on the issue of proper administrative exhaustion

with regard to the alleged August 1, 2009 emergency grievance.

---

[10]     In contrast to Plaintiff's claimed submissions of emergency grievances on July 2 and October 10, 2010 at DCF – on issues that are not claimed by Plaintiff as constitutional violations in this case, – the alleged August 1, 2009 emergency grievance *is* associated with a claimed constitutional violation, a failure to protect.  Doc. 1, at 17.  As to Plaintiff's claim of due process violations in connection with the alleged 2010 emergency grievances, the Tenth Circuit has determined that prison grievance procedures do not create a protected liberty interest and, therefor, do not implicate an inmate's due process rights under the Fourteenth Amendment.  *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs,* No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.).

[11]     Neither did Defendants address the evidence from another inmate who swore that he saw Plaintiff place the alleged emergency grievance in the "Grievance Box" on August 1, 2009.  Doc. 48, at Exhibit 2.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, it is the recommendation of the undersigned Magistrate Judge that Defendants' motion for summary judgment, Doc. 69, be denied as to Plaintiff's failure to protect claim against Defendants Choate, Middleton, and Taylor and granted in all other respects in favor of all remaining Defendants and on all remaining claims.  If this recommendation is adopted, it is further recommended that Plaintiff's request for injunctive relief requiring that former Defendant Justin Jones[12] and Defendant Wilkinson provide him with a kosher diet be denied as moot.  Doc. 85.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 20th day of March, 2013, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[12]     Plaintiff's claims against Defendant Jones have been dismissed. Doc. 68.

29

This Report and Recommendation does not terminate the referral of this matter.

IT IS SO ORDERED this 28th day of February, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE